# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP148-D |
| | |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Mark M. Ditter, Attorney at Law: |
| | Office of Lawyer Regulation, |
| |       Complainant, |
| |    v. |
| | Mark M. Ditter, |
| |       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST DITTER

| | |
|---|---|
| OPINION FILED: | March 9, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |
| | |
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |
| | |
| JUSTICES: | |
| Per Curiam. | |
| NOT PARTICIPATING: | |
| | |
| ATTORNEYS: | |

**2021 WI 21**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP148-D

STATE OF WISCONSIN        :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Mark M. Ditter, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**Mark M. Ditter,**

      **Respondent.**

**FILED**

**MAR 9, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review the report and recommendation of Referee Sue E. Bischel. Based on a stipulation by the parties, Referee Bischel determined that Attorney Mark M. Ditter committed four counts of professional misconduct. The referee, however, concluded that the level of discipline jointly requested by the parties, a 60-day suspension, was insufficient under the circumstances. Referee Bischel recommended that this court impose a 120-day suspension. She also recommended that the court require Attorney Ditter to pay the full costs of this

disciplinary proceeding, which are $3,896.68 as of August 26, 2020.

¶2 As neither party has appealed the referee's report and recommendation, we review this matter pursuant to Supreme Court Rule (SCR) 22.17(2).[1] We agree with the referee's conclusion that Attorney Ditter committed the four counts of professional misconduct alleged in the complaint filed by the Office of Lawyer Regulation (OLR). We conclude that Attorney Ditter's conduct in this matter requires a 90-day suspension of his license to practice law in this state. Because the Office of the State Public Defender (SPD) has already recouped the funds that Attorney Ditter failed to forward to a third party, we do not impose any restitution award in this matter. Finally, because Attorney Ditter did not enter into a stipulation until after both the OLR and the referee had expended time and money in proceeding with this matter, we require Attorney Ditter to pay the full costs of this disciplinary proceeding.

¶3 The referee found the facts set forth below. In addition to the facts to which Attorney Ditter stipulated, the referee made factual findings regarding Attorney Ditter's

---

[1] SCR 22.17(2) provides:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

interactions with the OLR during its investigation and events that occurred during this disciplinary proceeding. The referee gave Attorney Ditter the opportunity to object to any of her proposed factual findings, but he did not object.

¶4 We will begin with the stipulated facts regarding Attorney Ditter's underlying conduct and his response to the OLR's investigation. Then we will set forth the pertinent facts regarding Attorney Ditter's conduct during this disciplinary proceeding.

¶5 Attorney Ditter was initially admitted to the practice of law in this state in May 1983. He most recently operated a small law practice in Kaukauna.

¶6 Attorney Ditter has been the subject of professional discipline on two previous occasions, both of which were quite some time ago. In 1994 Attorney Ditter's law license was suspended for 60 days for engaging in the practice of law while his license had been administratively suspended for failure to comply with continuing legal education requirements. In re Disciplinary Proceedings Against Ditter, 187 Wis. 2d 337, 523 Wis. 2d 105 (1994). In 1996 Attorney Ditter consented to the imposition of a private reprimand for failing to act with reasonable diligence and for failing to communicate with a client. Private Reprimand No. 1996-17 (electronic copy available at https://compendium.wicourts.gov/app/raw/000179.html).

¶7 Attorney Ditter's license is currently suspended for multiple reasons. First, this court temporarily suspended his

3

license as of May 14, 2019, due to his willful failure to cooperate with the OLR's investigation of his conduct that is the subject of this disciplinary proceeding. Second, Attorney Ditter's license is also administratively suspended due to his non-payment of bar dues, his failure to file a trust account certification, and his noncompliance with continuing legal education requirements. See SCRs 10.03(6), 20:1.15(i)(4), and 31.02.

¶8 The facts underlying the counts of misconduct in this matter relate to Attorney Ditter's handling of funds in two cases in which he was appointed to represent indigent criminal defendants in the Outagamie County circuit court by the SPD. In both cases Attorney Ditter hired an investigator to prepare alternative pre-sentence reports. The investigator completed his work, and the alternative reports were filed with the circuit court in those two cases.

¶9 In the first case the SPD approved payment to Attorney Ditter and issued a check to Attorney Ditter in the amount of $2,463.70 on June 29, 2018. That amount included $1,200 for the work performed by the investigator, which Attorney Ditter was obligated to forward to him.

¶10 In the second case the SPD also approved payment to Attorney Ditter and issued a check to Attorney Ditter in the amount of $3,227.62 on July 20, 2018. That amount again included $1,200 for the work performed by the investigator, which Attorney Ditter was obligated to forward to him.

4

¶11 Attorney Ditter did not deliver to the investigator the $2,400 that he had received from the SPD and that he owed to the investigator. The investigator and the SPD made repeated requests for payment to Attorney Ditter by email, letter, and telephone calls. Attorney Ditter, however, did not respond. Ultimately, the investigator filed a grievance with the OLR regarding Attorney Ditter's failure to forward the funds he had received from the SPD.

¶12 Members of the OLR's intake department attempted to contact Attorney Ditter regarding the grievance. On December 7, 2018, Attorney Ditter sent an email to an OLR intake representative, in which he made the following statement: "I am working to get [the investigator] paid quickly. I sent him a payment this week towards one of the two outstanding bills, and expect to be able to take care of the rest very soon." Attorney Ditter's claim that he had sent a payment to the investigator was a false statement. He did not ever send a payment to the investigator for his work on the two cases. He converted to his own use the funds due to the investigator.

¶13 The OLR opened a formal investigation of the grievance against Attorney Ditter. On December 19, 2018, the OLR Trust Account Program Administrator, Travis Stieren, sent a letter to Attorney Ditter via first class mail advising him of the formal investigation and giving him a deadline of January 14, 2019, to provide a written response to the grievance against him. Attorney Ditter did not respond.

¶14 On January 29, 2019, Mr. Stieren sent a second letter, via both first class and certified mail, seeking a written response to the grievance by February 8, 2019. The January 29, 2019 letter also advised Attorney Ditter that in the event he failed to respond, the OLR Director was authorized to file a motion seeking the temporary suspension of his license for a willful failure to cooperate. The certified letter was returned to the OLR unclaimed. The letter sent via first class mail was not returned. Attorney Ditter again did not respond.

¶15 On February 15, 2019, Mr. Stieren sent an email to Attorney Ditter. He attached copies of his prior letters and requested a written response to the grievance by February 22, 2019. Attorney Ditter still did not respond.

¶16 Attorney Ditter finally spoke with Mr. Stieren via telephone on February 22, 2019. During that call, Attorney Ditter confirmed that he had received at least one of the OLR's letters. He stated that he would prepare and submit to the OLR a written response to the grievance by the following week. Later that same day, Attorney Ditter sent an email to Mr. Stieren, in which he stated, "Pursuant to our phone conversation this AM, I have prepared a response and have mailed it." Attorney Ditter's representation was false, as the OLR never received any written response to the grievance against him.

¶17 On March 12, 2019, the OLR filed a motion seeking the temporary suspension of Attorney Ditter's license to practice law in Wisconsin due to his willful failure to cooperate with

its investigation. This court subsequently issued an order directing Attorney Ditter to show cause in writing by April 3, 2019, why the OLR's motion should not be granted. Attorney Ditter did not respond to the court's order to show cause. Accordingly, on May 14, 2019, this court issued an order temporarily suspending Attorney Ditter's license to practice law in Wisconsin.

¶18 On March 27, 2019, due to Attorney Ditter's conversion of the funds, the SPD sent $2,400 directly to the investigator to pay him for the work he had performed on the two matters. In order to recoup the $2,400 owed to the investigator that Attorney Ditter had wrongfully converted, the SPD withheld that sum from subsequent payments made to Attorney Ditter on other cases.

¶19 The OLR filed a formal complaint against Attorney Ditter in this court on January 23, 2020. The referee's report contains additional factual findings regarding events that occurred during the disciplinary proceeding.

¶20 Attorney Ditter was personally served with the complaint and the order to answer on February 20, 2020. The order to answer required him to file an answer to the complaint within 20 days. Attorney Ditter did not file an answer or otherwise respond to the complaint.

¶21 After Referee Bischel was appointed, she sent an email to the parties on April 14, 2020, advising them of a telephonic scheduling conference to take place on April 22, 2020. Attorney Ditter did not respond to the referee's email, nor did he appear

for the telephonic scheduling conference. At that conference, the OLR's counsel advised the referee that he had made multiple attempts to contact Attorney Ditter, but had received no response.

¶22 Although Attorney Ditter's time for filing an answer had expired, the referee issued a scheduling order that granted him a period of additional eight days to file an answer. Attorney Ditter never filed an answer. Accordingly, the OLR filed a motion for a default.

¶23 The referee's scheduling order set a second scheduling conference for May 8, 2020. After difficulties reaching Attorney Ditter on both May 7, 2020, and May 8, 2020, the OLR's counsel did reach Attorney Ditter, and the parties then informed the referee that they wished to enter into a comprehensive stipulation. The referee issued an order directing the parties to file such a stipulation by June 1, 2020.

¶24 The referee did not receive a stipulation by the deadline. On June 2, 2020, the referee sent an email to the parties stating that unless they advised her that a stipulation was being filed, she would proceed with deciding the motion for a default. The OLR's counsel responded that he had sent the proposed stipulation to Attorney Ditter on May 11, 2020, with a request for a quick response, but that he had not received any response. Later that afternoon, Attorney Ditter sent a reply email to the referee, which stated, "My apologies. It's on the way by mail."

8

¶25 The next morning the referee sent Attorney Ditter an email asking him to advise to whom, from where, and on what date he had mailed the stipulation. Attorney Ditter responded, but did not provide the information requested by the referee. Attorney Ditter stated that he had signed the stipulation over the weekend, which the referee understood to mean the previous weekend (May 30-31), and had then mailed it (presumably to the OLR). The OLR's counsel, however, advised the referee that he had not received the original in the mail from Attorney Ditter as of June 4, 2020, when counsel sent a scanned version of the stipulation to the referee. The scanned version indicated that Attorney Ditter had signed the stipulation as of May 26, 2020, which was actually the preceding Tuesday (not the previous weekend). Ultimately, the OLR's counsel filed a printout of the scanned version of the stipulation with the clerk of this court on June 12, 2020. The cover letter accompanying that scanned version indicated that the OLR had still not received the original signed stipulation from Attorney Ditter so it was filing a printout of the scanned version.

¶26 The referee did not make a specific finding that Attorney Ditter had intentionally misrepresented to her when he had signed and mailed the original stipulation to the OLR. She includes the facts regarding Attorney Ditter's representation and his conduct regarding the stipulation because she had concerns about Attorney Ditter's veracity and his continued lack of cooperation with the disciplinary process during the formal disciplinary proceeding.

9

¶27 The stipulation provides that Attorney Ditter pleads no contest to the four counts of professional misconduct alleged in the OLR's complaint and that the referee may use the allegations in the complaint as an adequate factual basis for a determination of misconduct as to each count of the complaint. Further, Attorney Ditter agrees with the OLR's director that the appropriate level of discipline in this matter would be a 60-day suspension of Attorney Ditter's license to practice law in Wisconsin. The stipulation states that it is not the result of plea bargaining. In addition, in the stipulation Attorney Ditter verifies that he fully understands the misconduct allegations which he is admitting; that he fully understands his right to contest the allegations of the complaint; that he fully understands the ramifications of his entry into the stipulation; that he fully understands his right to consult counsel about entering into the stipulation; and that his entry into the stipulation is knowing and voluntary.

¶28 Based on these facts, the referee concluded that the OLR had sufficiently proven that Attorney Ditter had engaged in four counts of professional misconduct. First, by failing to deliver funds he received from the SPD to the investigator to pay for his services on behalf of Attorney Ditter's clients, Attorney Ditter violated SCR 20:1.15(e)(1).[2] Second, by

---

[2] SCR 20:1.15(e)(1) provides:

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or

10

converting to his own purposes those funds that he was required to hold in trust, Attorney Ditter violated SCR 20:8.4(c).[3] Next, by misrepresenting to the OLR's representative that he had sent a partial payment to the investigator when he had not done so, Attorney Ditter again violated SCR 20:8.4(c). Finally, by willfully failing to cooperate with the OLR's investigation when he failed to respond to the OLR's multiple written requests for information, Attorney Ditter violated SCR 22.03(2)[4] and

---

contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[3] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

SCR 22.03(6),[5] which also constitutes a violation of SCR 20:8.4(h).[6]

¶29 The referee invited the parties to submit memoranda to her regarding the appropriate sanction in this matter. The OLR filed such a memorandum, in which it asked the referee to recommend a 60-day suspension. Attorney Ditter did not file a sanction memorandum.

¶30 Concluding that the 60-day suspension requested by the OLR was not sufficient, the referee ultimately recommended a 120-day suspension of Attorney Ditter's license to practice law in Wisconsin. She pointed to a number of factors that supported her recommendation. She found Attorney Ditter's misconduct, which involved converting funds belonging to an investigator, as well as failing to cooperate with and lying to the OLR, to be serious and to involve more than a single instance of misconduct. She emphasized that Attorney Ditter's conduct in lying to the OLR and generally failing to cooperate with the OLR's investigation and this disciplinary proceeding indicated that he did not understand the seriousness of his misconduct or

---

[5] SCR 22.03(6) provides: "In the course of the investigation, the respondent's willful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[6] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

its impact on the judicial system and the public.[7] Moreover, Attorney Ditter's previous misconduct involved continuing to engage in the practice of law for nearly 11 months after his license had been administratively suspended and a failure to cooperate with the ensuing disciplinary investigation, which demonstrated a cavalier attitude toward his obligation to comply with this court's rules of conduct. His conduct in this matter demonstrated a similar attitude. As one of the prior disciplinary proceedings involved the imposition of a 60-day suspension, the referee indicated that the principle of progressive discipline required a longer suspension in this matter. The referee considered the disciplinary decisions cited by the OLR, but concluded that they did not match the circumstances and extent of Attorney Ditter's misconduct.

¶31 Because the SPD had paid the investigator the amounts due and had then deducted those amounts from other funds due to Attorney Ditter, the OLR did not request and the referee did not recommend that the court order Attorney Ditter to pay any restitution.

¶32 The referee recommended that Attorney Ditter be required to pay the full costs of this disciplinary proceeding.

---

[7] The referee noted that in her prior experience as a circuit court judge, sentencing judges rely heavily on alternate presentence investigation reports prepared by individuals hired by defendants, as occurred here with the investigator. If such individuals cannot trust that they will be paid for their work, it may discourage them from preparing such reports, which would harm not only the defendants but the sentencing judges, who will have less information on which to base their sentences.

Although Attorney Ditter did ultimately enter into a comprehensive stipulation, the referee emphasized that Attorney Ditter's ongoing failure to cooperate with the OLR or to respond in a timely manner in this disciplinary proceeding had required the OLR to incur costs and had necessitated the appointment of a referee.

¶33 As Attorney Ditter has not appealed the referee's report or recommendation, our review of this matter proceeds pursuant to SCR 22.17(2). When we review a referee's report, we will affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶34 In this case Attorney Ditter has stipulated to the facts and acknowledges that those facts support conclusions of law that he committed the four counts of professional misconduct alleged in the OLR's complaint. There is no dispute about Attorney Ditter's underlying misconduct. In addition, to the extent that the referee's preliminary and final report contain factual findings about events that occurred during the disciplinary proceeding before the referee, Attorney Ditter also has not contested those facts. We therefore adopt the referee's

14

factual findings, and we agree that he committed the four counts of misconduct alleged by the OLR.

¶35 The issue that this court must decide in this matter is the appropriate level of discipline to impose. We agree with the referee that the 60-day suspension jointly requested by the parties would be insufficient under all of the circumstances of this case.[8] The operative question is whether the suspension here should be for 90 days or 120 days.

¶36 In its sanction memorandum to the referee, the OLR cited four prior cases that it considered analogous to the present case and that supported its request for a 60-day suspension. We again agree with the referee that the most analogous of those four cases is In re Disciplinary Proceedings Against Alfredson, 2019 WI 17, 385 Wis. 2d 565, 923 N.W.2d 869 (Alfredson II). In that case Attorney Alfredson failed to hold in trust and then converted funds that she had received from her client and that were to be held in trust and ultimately paid to

---

[8] A stipulation by the OLR and a respondent attorney as to a particular level of discipline is a joint request to this court for the imposition of that sanction. The agreement of the parties as to the sanction binds neither the referee nor this court. The determination of the appropriate level of discipline is a matter committed to this court, which is the entity responsible under the Wisconsin Constitution for the regulation of the practice of law. Wis. Const. art. VII, § 2 (judicial power of this state is vested in uniform court system, of which the supreme court is the head); Wis. Const. art. VII, § 3 (supreme court has superintending and administrative authority over all courts in state); In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686 (supreme court independently determines appropriate level of discipline).

15

her client's ex-spouse. She also failed to respond to multiple requests for information from the OLR, responding only when the OLR threatened to move for a temporary suspension of her license. When Attorney Alfredson did finally respond to one OLR request, her response was misleading because she failed to include the fact there was an outstanding issue with her alleged payment of the remaining trust funds. In a second client matter, Attorney Alfredson failed to communicate with her client and then failed for three months to provide her client's file to successor counsel.

¶37 The referee, however, believed that Attorney Ditter's misconduct merited a longer suspension than the 90-day suspension imposed on Attorney Alfredson in Alfredson II. She pointed to the fact that Attorney Ditter's case included a count of lying to the OLR during its investigation about whether he had sent a payment to the investigator, which was not present in Alfredson II. Indeed, the factual findings indicated that Attorney Ditter had also made a second misrepresentation to the OLR when he said he had mailed a written response to the investigator's grievance. Most importantly, the referee believed that Attorney Ditter's ongoing lack of cooperation with the OLR's investigation and the disciplinary proceeding merited a longer suspension.

¶38 Although we agree that Attorney Ditter's lack of cooperation with the investigation and disciplinary proceeding is troubling, we do not think that the facts of Attorney Alfredson's case are so different that Attorney Ditter should be

16

treated differently. Like Attorney Ditter, Attorney Alfredson repeatedly failed to respond to the OLR's requests for information during its investigation. She responded to the OLR only when it threatened to seek a temporary suspension of her license. When the OLR sought additional information, she again did not respond until the OLR threatened once more to seek a temporary suspension. Like Attorney Ditter, Attorney Alfredson did not enter into a stipulation until after the disciplinary proceeding had begun and a referee had been appointed. Attorney Ditter did not file an answer to the OLR's complaint, leading the OLR to file a motion for a default, but Attorney Ditter, like Attorney Alfredson, did ultimately stipulate to the facts and acknowledge his misconduct. The fact that Attorney Alfredson filed an answer before entering into a stipulation is not a significant difference in the level of cooperation.

¶39 It is also true that the OLR charged Attorney Ditter with a count of making a false statement to it while there was no such count alleged against Attorney Alfredson. Our decision in the Alfredson II case, however, shows that she also was not truthful to the OLR. When she finally did provide a response to the grievance against her, she failed to disclose the fact that successor counsel had not received the check she claimed to have sent and that the client's money was still in her possession (and not in her client trust account). In addition, although it did not include a specific charge of making a false statement, the OLR advised the referee that Attorney Alfredson had "engaged

17

in a pattern of neglect, <u>dishonesty</u>, and failure to cooperate."[9] <u>Alfredson II</u>, 388 Wis. 2d 565, ¶25 (emphasis added).

¶40 We certainly do not condone Attorney Ditter's failure to cooperate or his false statements to the OLR.[10] His response to the OLR's investigation and this disciplinary proceeding should factor into the sanction determination. Nevertheless, although each case must be decided based on its unique facts, we endeavor to impose similar discipline in similar cases. We conclude that it is appropriate here to impose a 90-day suspension on Attorney Ditter for his professional misconduct, as we did with respect to Attorney Alfredson. Imposing a 90-day suspension in this case will still comport with our general policy of imposing progressive discipline for subsequent misconduct. <u>See, e.g.</u>, <u>In re Disciplinary Proceedings Against Nora</u>, 2020 WI 70, ¶91, 393 Wis. 2d 359, 945 N.W.2d 559; <u>In re Disciplinary Proceedings Against Netzer</u>, 2014 WI 7, ¶49, 352

---

[9] We also note that both Attorney Ditter and Attorney Alfredson previously received a 60-day suspension. Attorney Ditter did also previously receive a consensual private reprimand. However, both of Attorney Ditter's instances of previous discipline were fairly remote in time, dating back to the mid-1990s. Thus, he practiced for two decades without being subject to professional discipline. Attorney Alfredson, on the other hand, had received her 60-day suspension just two years prior to receiving the 90-day suspension.

[10] The referee expressed concern about Attorney Ditter's truthfulness in telling the referee that he had mailed the original stipulation to the OLR's counsel. The referee, however, expressly did not make a factual finding that Attorney Ditter had made a misrepresentation in this regard. Consequently, we do not think that it would be appropriate to base a longer suspension on that instance.

18

Wis. 2d 310, 841 N.W.2d 820; In re Disciplinary Proceedings Against Nussberger, 2006 WI 111, ¶27, 296 Wis. 2d 47, 719 N.W.2d 501.

¶41 Although Attorney Ditter did ultimately enter into a comprehensive stipulation, we agree that he should be required to pay the full costs of this disciplinary hearing. His failure to cooperate with the disciplinary process required the OLR to file a complaint and a motion for a default, and it required the court to appoint a referee. The costs of this proceeding are therefore appropriately the responsibility of Attorney Ditter.

¶42 We do not impose a restitution obligation on Attorney Ditter. The SPD already recouped the $2,400 that it was required to pay directly to the investigator by deducting that amount from the fees owed to Attorney Ditter in other cases.

¶43 IT IS ORDERED that, as discipline for his professional misconduct, the license of Mark M. Ditter to practice law in Wisconsin is suspended for a period of 90 days, effective as of the date of this order.

¶44 IT IS FURTHER ORDERED that the May 14, 2019 temporary suspension in Case No. 2019XX428-D of Mark M. Ditter's license to practice law in Wisconsin, due to his willful failure to cooperate with the grievance investigation in this matter by the Office of Lawyer Regulation, is lifted.

¶45 IT IS FURTHER ORDERED that within 60 days of the date of this order, Mark M. Ditter shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $3,896.68 as of August 26, 2020.

¶46 IT IS FURTHER ORDERED that, to the extent he has not done so, Mark M. Ditter shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶47 IT IS FURTHER ORDERED that the administrative suspension of Mark M. Ditter's license to practice law in Wisconsin, due to his failure to pay mandatory bar dues, his failure to file Office of Lawyer Regulation trust account certification, and his noncompliance with continuing legal education requirements, will remain in effect until each reason for the administrative suspension has been rectified pursuant to SCR 22.28(1).

¶48 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).