IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Shawn G. RICE, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Shawn G. RICE, Respondent.

Supreme Court

*No. 2005AP1181–D. Decided June 7, 2007.*

2007 WI 68

(Also reported in 732 N.W.2d 440.)

¶ 1. PER CURIAM. We review the referee's recommendation that we publicly reprimand Attorney Shawn G. Rice for professional misconduct committed in connection with his personal involvement in a commercial

real estate transaction. Neither the Office of Lawyer Regulation (OLR) nor Attorney Rice has appealed the recommendation filed by the referee, James J. Winiarski. Therefore, the matter is submitted to the court for review pursuant to SCR 22.17(2).[1] In conducting our review we will affirm the referee's findings of fact unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law de novo. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. In accordance with our authority to supervise the practice of law in this state, we determine the level of discipline that is appropriate under the particular circumstances, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 2. Attorney Rice was admitted to practice in Wisconsin in 1993. He has no prior disciplinary history. On May 5, 2005, the OLR filed a complaint against him, alleging four counts of conduct involving dishonesty, fraud, deceit or misrepresentation in violation of SCR 20:8.4(c).[2] Attorney Rice filed an answer and the matter was submitted to a referee. The parties executed a joint

---

[1] SCR 22.17(2) provides: Review; appeal.

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

[2] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

stipulation as to facts and a hearing was conducted on March 7 and 8, 2006. Post-hearing briefs were submitted and the referee filed his report on September 25, 2006. No appeal was filed.

¶ 3. The situation that gave rise to the OLR complaint is explained thoroughly in the referee's report and recommendation. We draw heavily from that excellent report and recommendation in our decision here. As noted, the alleged misconduct occurred in connection with a commercial real estate transaction that went awry, resulting in civil litigation. A stipulation was submitted to the referee, but as the referee notes, it includes numerous "contentions" of the various parties and was of limited assistance in helping the referee resolve factual issues in this disciplinary matter. Our discussion does not describe every detail or nuance of the underlying commercial real estate transaction, only those findings we find relevant to the disciplinary matter before us today.

¶ 4. On June 17, 2002, Jetmir Ameti ("Ameti") through his real estate agent, Paul Gottsacker ("Gottsacker"), submitted an offer to purchase a parcel of commercial property in Sheboygan, Wisconsin ("the property") for $370,000. The offer was not accepted.

¶ 5. Gottsacker and Ameti then approached Attorney Rice because Gottsacker knew that Attorney Rice had previously expressed interest in purchasing commercial real estate for personal investment purposes. On or about June 25, 2002, Attorney Rice, Gottsacker and Ameti verbally reached an understanding. Attorney Rice would purchase the property and Ameti would lease the property from Attorney Rice, with an option to eventually purchase the property.

¶ 6. On July 8, 2002, Attorney Rice drafted an offer to purchase the property for $430,000, listing the

buyer as Trinity Partners, LLC ("Trinity"). Trinity consisted of Attorney Rice and a trust created for the benefit of his wife and children. Ameti was not a member of Trinity. He had no authority to sign documents on behalf of Trinity.

¶ 7. On or about July 9, 2002, Gottsacker met with Ameti to review the offer to purchase. Ameti approved the terms and Gottsacker signed Ameti's name to the offer on behalf of Trinity Partners, LLC, without indicating the signature was not made by Ameti. Gottsacker then faxed the offer to the seller. The signature on the offer read: "Jetmir Ameti" under which was typed: "Buyer's Signature; Print Name Here: Trinity Partners, LLC."

¶ 8. Gottsacker apparently proposed that Ameti's name appear on the offer, as opposed to that of Attorney Rice, so that the seller would not know there was a "new player" interested in the property.

¶ 9. On July 11, 2002, several things happened. The seller submitted a counteroffer that amended the closing date, but made no other substantial changes to the offer. Attorney Rice signed Ameti's name to the counteroffer, with a signature block that falsely represented that Ameti was a member of Trinity.

¶ 10. This action comprises the first count of misconduct alleged in the OLR complaint.

¶ 11. Ameti and Attorney Rice then signed a letter of intent entitled "Intent to Lease Proposal" that set forth the basic terms of their agreement with respect to the property. The letter identified the tenant as Jetmir Ameti and the landlord as "Trinity Partners, LLC or its assigns." One provision of the letter of intent read: "It is understood and agreed that this letter of intent shall not be binding upon either party until a Lease document is drafted and fully executed by both Landlord

98

and Tenant and until the board of directors for both Landlord and Tenant have fully approved the Lease."

¶ 12. On July 24, 2002, Attorney Rice sent a proposed lease to the attorney with the law firm of von Briesen & Roper, S.C., which initially represented Ameti in the negotiations.

¶ 13. On July 26, 2002, Attorney Rice formed a new limited liability company entitled 2327, LLC. Attorney Rice was the sole member of 2327, LLC. On July 31, 2002, a Unanimous Consent of the Members of Trinity Partners, LLC, was executed, assigning its rights and obligations under the offer for the property to 2327, LLC. On the same date, an Assignment and Assumption of Offer to Purchase was executed between Trinity and 2327, LLC. Attorney Rice signed the Assignment on behalf of both entities.

¶ 14. Attorney Rice then hired Alpha Terra Science to perform a Phase I Environmental Site Assessment ("Phase I") on the property. After reviewing the results of the Phase I, Alpha Terra suggested further testing as there was an indication there might be a problem. At this point, the "deal" began to go awry.

¶ 15. On July 31, 2002, Attorney Rice submitted copies of the Phase I to the seller's attorney. He then contracted with Alpha Terra Science to conduct a Phase II Environmental Site Assessment ("Phase II") on the property.

¶ 16. In mid-August 2002, Gottsacker, Ameti, and Attorney Rice held a three-way telephone conference to discuss the results of the Phase II. During this conversation, Ameti indicated he was no longer interested in leasing or buying the property because the Phase II results showed the property ". . . wasn't completely 100 percent clean." Attorney Rice and Ameti had yet to

agree upon the terms of the lease and, thus, there was no binding agreement between them—only the initial letter of intent.

¶ 17. On the afternoon of August 14, 2002, Attorney Rice, who was anxious about Ameti's apparent decision to pull out of the deal, met with Thomas Schafer ("Schafer") to discuss Schafer's possible purchase of the property.

¶ 18. Attorney Rice verbally agreed to sell the property to Schafer. Gottsacker attended that meeting. After the meeting, Attorney Rice typed an "Outline of Agreement" in which he proposed to sell his entire ownership interest in 2327, LLC, to Schafer for $440,000, plus all costs incurred in acquiring the property. The Outline of Agreement also stated: "Other terms and conditions to be agreed by the parties and set forth in a definitive agreement." Schafer accepted the terms of the Outline of Agreement, but changed the closing date to September 26, 2002, and returned a signed copy of the Outline of Agreement to Attorney Rice.

¶ 19. The third count of the OLR complaint alleged that Attorney Rice failed to disclose a binding agreement to sell real estate to one individual while negotiating to sell the same property to a second individual.

¶ 20. On August 15, 2002, Attorney Rice received an e-mail from Ameti's counsel, an attorney at Von Briesen & Roper, S.C., inquiring about the closing date. In response to that e-mail, Attorney Rice sent a letter via facsimile confirming that the closing was scheduled for the following date but did not include the time or location of the closing. Attorney Rice contends that he felt he had no need or obligation to provide this information because he understood that the inquiry was in

connection to efforts by Ameti to lease the building, not to purchase the real estate.

¶ 21. Attorney Rice also did not disclose to Ameti's counsel that on July 31, 2002, that he had formed a new entity, called 2327, LLC, for purposes of taking title to the property, and that Attorney Rice had assigned to 2327, LLC, Trinity's entire interest in the property.

¶ 22. On August 15, 2002, Attorney Rice sent an e-mail to Ameti's lawyer in which he stated: "I understand your client did not want to close if the property was not 100% clean. Phase II was faxed to you this a.m. Please call me after reviewing it." The responsive e-mail stated: ". . . [Ameti] just told me he talked with Steven [from Alpha Terra Science] regarding Phase II and he was comfortable with the risk and wanted to proceed."

¶ 23. Attorney Rice then sent an e-mail stating: "My client is not as confident as Jetmir is. Have you spoken to alpha terra directly?"

¶ 24. Alpha Terra faxed the Phase II test results to Ameti's lawyer on August 15, 2002.

¶ 25. Sometime on August 15, 2002, Attorney Rice had a conversation with Ameti during which Ameti indicated he was interested in leasing and ultimately purchasing the property.

¶ 26. Attorney Rice did not disclose to Ameti or Ameti's lawyer that he had signed an Outline of Agreement with Schafer. Attorney Rice claimed that he was not obligated to do so since neither party was bound by the agreement at that time.

¶ 27. On August 15, 2002, Attorney Rice faxed a proposed purchase agreement to Schafer's lawyer.

¶ 28. On August 20, 2002, Attorney Rice sent Ameti's lawyer an e-mail stating: "Your client's indication on Thursday, August 15th that he would not lease

the property if it was not 100% clean caused Trinity Partners to pursue other alternatives."

¶ 29. At some point after the August 16, 2002 closing, Attorney Rice resumed discussions with Ameti and his lawyer regarding leasing the property with an obligation to buy the property at the conclusion of the lease. During these negotiations Attorney Rice did not disclose that he had already signed an Outline of Agreement with Schafer and had received a $5000 payment.

¶ 30. Attorney Rice continued negotiating the terms of the agreement with Schafer's attorney. He contends that negotiations stalled when Schafer attempted to change the terms of the agreement. On September 5, 2002, Attorney Rice sent a letter to Schafer and enclosed a $5000 check as reimbursement for the payment previously made to him.

¶ 31. On September 6, 2002, Ameti executed an "Agreement to Purchase Limited Liability Company Interest" in which Attorney Rice agreed to sell his entire interest in 2327, LLC, to Ameti for $450,000, with a closing date of September 30, 2002. Attorney Rice did not disclose to Ameti the August 14, 2002, Outline of Agreement with Schafer. He contended that he had no obligation to disclose that document because it was non-binding.

¶ 32. Attorney Rice had subsequent discussions with Schafer's attorneys in which he did not disclose the September 6, 2002, agreement with Ameti. Again, Attorney Rice contends that he regarded the agreement with Ameti as non-binding and that, therefore, he had no obligation to disclose it to Schafer or his attorneys. However, in a letter Attorney Rice later wrote to the OLR investigator, Jessica Long, dated March 15, 2004, Attorney Rice stated:

Since no formal agreement was signed with Schafer, and since Rice believed the Outline of Agreement was not a binding contract, Rice entertained further discussions with Ameti, who by that time had obtained subsequent financing capable of purchasing the property from 2327, LLC. 2327 LLC and Ameti entered into a valid and binding contract for the purchase of the LLC which controlled the property on September 6, 2002.

¶ 33. Attorney Rice received a letter from Schafer's attorney dated September 9, 2002, in which he indicated that Schafer intended to "go forward with the closing on September 12th or September 26th." On September 12, 2002, Attorney Rice replied, stating that he had earlier explained to Schafer that if Schafer wanted to proceed, he would be getting the property "as is," with the buyer assuming the risk for any potential claims by third persons.

¶ 34. On September 20, 2002, Schafer filed an affidavit of interest with the Sheboygan County Register of Deeds.

¶ 35. On September 26, 2002, Michael Mnichowicz ("Mnichowicz"), a lawyer at Attorney Rice's firm, sent an e-mail to Schafer's lawyer and Attorney Rice in which he stated: "If you [Seibel, on behalf of Schafer] are ready, willing and able to close, I must assume your client is willing to accept the property and the LLC subject to the interests of Mr. Ameti since that was one of the assumptions in which the outline of agreement was based."

¶ 36. Amati subsequently filed a civil lawsuit against several of the participants to this real estate transaction, including Attorney Rice. *See Ameti v. Rice, et al.,* No. 01–CV–679, Sheboygan County Circuit Court.

¶ 37. During his deposition in connection with this lawsuit, Attorney Rice testified that he had consulted with an environmental attorney in his firm after he received the preliminary results of the Phase II and before he spoke with Ameti and Gottsacker. Attorney Rice stated that his firm's environmental attorneys told him ". . . that there was no action that was required by the property owner or anyone else in receipt of the report." Attorney Rice testified that he was still concerned about the contamination, but stated: "I deferred to counsel in that it wasn't a clear violation that required any action at that point."

¶ 38. It was later determined that Attorney Rice, in fact, did not consult with an environmental attorney after he received the preliminary results of Phase II. Attorney Rice only consulted with an environmental attorney at his law firm after receiving the Phase I results. In April 2003, as part of the then-pending civil litigation, Attorney Rice's counsel and Ameti's counsel signed a stipulation that stated in relevant part as follows:

> At no time prior to August 17, 2002, did defendant, Shawn Rice, or any person acting on his behalf, discuss or confer with any attorney competent in environmental law at Davis & Kuelthau, S.C., regarding either the results or the significance of the Phase II environmental assessment that was performed by Alpha Terra Science, Inc., and/or Test America Incorporated on or about August 9, 2002 to August 14, 2002.

In the stipulated facts executed in connection with this matter, Attorney Rice acknowledges that his deposition testimony included a misrepresentation regarding the "Phase II" report. The second count of the OLR complaint alleges that Attorney Rice gave false testimony during a deposition in violation of SCR 20:8.4.

¶ 39. In addition, at his February 11, 2003 deposition in the civil suit, Attorney Rice was asked whether he told Mnichowicz about the purchase agreement he had signed with Mr. Ameti on September 6, 2002. Attorney Rice answered: "Mr. Mnichowicz was aware of the agreement with Mr. Ameti that was signed on September 6th." Attorney Rice was then asked: "Was he [Mnichowicz] was [sic] aware that you weren't willing to sell the property to Mr. Schafer subject to Mr. Ameti's interests before September 30th?" Attorney Rice replied: "You could read this several ways." He then stated: "Mr. Mnichowicz understood the entire situation here."

¶ 40. However, during his March 20, 2003 deposition in the civil suit, Mnichowicz testified that he had *not* previously been made aware by Attorney Rice of the September 6, 2002 agreement with Ameti. He testified that he saw that agreement for the first time at his deposition. The fourth count of the complaint also alleges that Attorney Rice gave false testimony during a civil deposition.

¶ 41. The civil lawsuit was settled prior to trial. Pursuant to the terms of the settlement, Attorney Rice subdivided the property and conveyed a portion of the property to Ameti for a purchase price of $170,000. Attorney Rice conveyed the remaining portion of the property to Schafer and paid Schafer $55,000 in exchange for a full release of all claims against the property.

¶ 42. The OLR complaint against Attorney Rice was filed on May 5, 2005.

██

¶ 43. The referee reviewed all these matters and reached the following conclusions of law. The referee concluded that the OLR had met its burden of proof

with respect to Counts I, II and IV, pertaining to the allegations that Attorney Rice violated SCR 20:8.4 twice by making false statements in a deposition and in executing a document falsely reflecting Ameti as a member of Trinity.

¶ 44. However, the referee concluded that the OLR failed to prove Count III, stating that the OLR "failed to prove by clear, satisfactory, and convincing evidence that by failing to disclose to Schafer that Rice had entered into a binding agreement with Ameti and, after having entered into the binding agreement with Ameti, continuing to negotiate a sale of the property to Schafer without disclosing such negotiations to Ameti, Rice engaged in conduct . . . contrary to SCR 8.4(c)."

¶ 45. The referee thus concluded that based on the record evidence presented, Attorney "Rice did not have a binding contract to sell or lease the subject real estate to either Amati or Schaefer until the September 6, 2002, contract." The referee noted that "[t]he actions of Ameti also show that he thought he could walk away from the initial transaction." The referee concluded that there was "insufficient evidence" to show that Attorney Rice was being dishonest or deceitful when he continued negotiations with Schafer after he entered into the September 2002, binding contract.

¶ 46. We accept the referee's factual findings and the legal conclusions drawn from those findings.

¶ 47. Accordingly, we turn to the appropriate discipline for the three violations of SCR 20:8.4. We note that the OLR argued for a 60–day suspension. The referee rejected that recommendation, explaining that he did not perceive a "pattern of misconduct" in this case. The referee recommended a public reprimand, explaining:

I have carefully reviewed all the evidence cited by OLR in support of their argument of a pattern of misconduct. I do not find such a pattern of misconduct. Instead, I find that Rice lacked experience in making personal investments in commercial real estate. . . .

Rice's judgment was clouded by the fact that he had personally invested funds in the transaction. His deposition testimony, while untruthful and clearly a misrepresentation, was an improper attempt to try to protect himself from civil liability in a transaction that had gotten out of hand. Also, the evidence does not show that Rice had any original intention to misrepresent any facts to anyone.

I do not excuse any of Rice's misrepresentations, but I also do not find that they constitute a pattern of misconduct. . . .

The referee continued:

It is of particular importance to me in recommending appropriate discipline that Rice did not enter into this transaction with the intent to deceive anyone. He found himself getting deeper and deeper into a quagmire as a result of a poor decision to involve himself personally in a real estate investment opportunity. I also place considerable weight on the fact that Ameti and Schafer were not Rice's clients, but rather astute businessmen who had no reluctance to use all leverage available to them to get their way.

The referee recommended further that the court require Attorney Rice to pay the costs of this proceeding.

¶ 48. Ultimately, we agree that a public reprimand is adequate discipline for Attorney Rice's misconduct in connection with the handling of this commercial real estate transaction. Attorney Rice is further ordered

to pay the costs of this proceeding which total $28,832.91, as of October 18, 2006.[3]

¶ 49. IT IS ORDERED that Attorney Shawn G. Rice is publicly reprimanded for his professional misconduct.

¶ 50. IT IS FURTHER ORDERED that within 60 days of the date of this order Shawn G. Rice pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Shawn G. Rice to practice law in Wisconsin shall be suspended until further order of the court.

---

[3] By S.Ct. Order 05–01, 2006 WI 34, 287 Wis. 2d xiii, 714 N.W.2d Ct.R-21 (May 1, 2006), this court amended the rules pertaining to imposition of costs in lawyer disciplinary matters filed on or after July 1, 2006. The complaint in this matter was filed May 5, 2005; the new rules are not applicable here.