IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Alexis L. MICHAEL, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Alexis L. MICHAEL, Respondent.

Supreme Court

*No. 2008AP2337–D.—Decided November 4, 2011.*

2011 WI 96

(Also reported in 805 N.W.2d 110.)

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶ 1. PER CURIAM. On May 10, 2011, Referee Richard M. Esenberg issued a report recommending that Attorney Alexis L. Michael be declared in default, concluding that Attorney Michael engaged in numerous counts of professional misconduct, and recommending that her license to practice law in Wisconsin be revoked.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. Since Attorney Michael failed to present a defense despite being given multiple opportunities to do so, we declare her to be in default. We further determine that the seriousness of Attorney Michael's misconduct warrants the revocation of her license to practice law in Wisconsin. We also conclude that the full costs of the proceeding, which are $6,853.80 as of May 31, 2011, should be assessed against Attorney Michael.

¶ 3. Attorney Michael was admitted to practice law in Wisconsin in 2004. On October 31, 2007, Attorney Michael's license to practice law in Wisconsin was suspended for nonpayment of state bar dues. Her license remains suspended.

¶ 4. On September 19, 2008, the Office of Lawyer Regulation (OLR) issued a complaint against Attorney Michael alleging 34 counts of misconduct in violation of 14 separate Rules of Professional Conduct for Attorneys.

¶ 5. The allegations in the 59–page OLR complaint, which are discussed in great detail in the 52–page referee's report, will not be extensively recited or repeated here. The counts of misconduct all arose out of Attorney Michael's operation of a bed and breakfast in Oconomowoc, Wisconsin, and an apartment building in Watertown, Wisconsin. Attorney Michael and her husband, Frederick Decker, formed a variety of legal entities, some of which had been involved in running the bed and breakfast and apartment building. In her management of the bed and breakfast, Attorney

Michael used a variety of aliases in dealing with employees and the Oconomowoc Police Department often in an effort to evade payment of the bed and breakfast's obligations. At various times, Attorney Michael told bed and breakfast employees that her name was "Jennifer," "Monica," "Rochelle," "Sarah," and "Ally." Attorney Michael told one employee that her philosophy was "if they can't find you they can't serve you." Employees figured out that the person who called herself by these various names was actually Attorney Michael because Waukesha County sheriff's deputies and process servers came to the bed and breakfast frequently to serve Attorney Michael with process or to collect money.

¶ 6. The OLR's complaint alleged that Attorney Michael engaged in professional misconduct in an effort to avoid paying wages to bed and breakfast employees. The complaint alleged that Attorney Michael failed to pay $408 to a 14–year-old boy who worked at the bed and breakfast in late 2006. The boy's mother did not allow her son to return to work because he had not been paid for work he had already performed. Attorney Michael asserted to other employees that federal law required her to withhold an employee's pay unless specific identification was provided. This claim was untrue since a representative of the Wisconsin Department of Workforce Development, Equal Rights Division, advised the boy's mother that his work permit was sufficient identification for him to be paid.

¶ 7. In late 2006 the boy's mother made numerous telephone calls and visits to the bed and breakfast trying to collect her son's pay. Although Attorney Michael did not pay the boy, she attempted to deter his mother from seeking compensation on his behalf. Attorney Michael filed written statements with the Oconomowoc Police Department claiming the boy's

mother had made well over 150 phone calls to Attorney Michael's private, business, and family phones in the past few days and had gone to Attorney Michael's residence six to ten times per day, staying at the property 20 to 30 minutes each time. On two occasions in early December 2006, Attorney Michael filed written statements with the Oconomowoc Police Department accusing the boy's mother of trespassing at the bed and breakfast. Attorney Michael later claimed the boy's mother "is a tyrant and has been coming to the bed-and-breakfast at least six to 10 times a day and has placed at least 200 phone calls in the last month. ... "

¶ 8. On December 8, 2006, Attorney Michael filed a petition for a temporary restraining order and injunction against the boy's mother in Waukesha County Circuit Court. A court commissioner issued a temporary restraining order, but the case was later dismissed when Attorney Michael failed to appear for a hearing. Although Attorney Michael testified during the initial hearing in the Waukesha County case that she had "received probably close to 250 calls" from the boy's mother between November 17 and December 22, 2006, the boy's mother's home and cellular telephone records showed only four calls made to three telephone numbers associated with Attorney Michael between November 17 and December 22, 2006.

¶ 9. In May 2007 Attorney Michael filed another petition for a temporary restraining order and injunction against the boy's mother, this time in Jefferson County. The petition alleged that the boy's mother was harassing Attorney Michael in a variety of ways. The petition asked that the court order the boy's mother to "stop calling, destroying mine and tenants' property ... Remain 200 feet from my places of work ... Do not contact (personally, written, phone, etc.) any of the

327

tenants I manage. Immediately dismantle defamatory website." Attorney Michael asked one of the court commissioner's staff if the commissioner assigned to the case would alter the order to be more specific about the location where Attorney Michael owns property. The staff member informed the commissioner that Attorney Michael was requesting that he include additional language in the order. The commissioner declined to do so and said the matter would be clarified at the hearing with all parties present.

¶ 10. On May 23, 2007, the Jefferson County court commissioner issued a Notice of Hearing-Temporary Restraining Order. The commissioner checked two boxes on the form but did not write in any additional prohibitions or directives. After the commissioner refused to alter the order, he had a staff member record a memo to the file confirming he had refused to include any additional language or orders. The staff member gave the paperwork back to Attorney Michael, told her the commissioner would not add anything to the order, and sent Attorney Michael to the clerk of court to file it. Prior to having the notice and order served on the minor employee's mother, Attorney Michael altered it.

¶ 11. On May 23, 2007, a Jefferson County court commissioner explained to Attorney Michael that she was not permitted to serve defendants in matters in which she was a party or counsel. Notwithstanding that advice, Attorney Michael called the Oconomowoc Police Department to ask that an officer be present while she served the temporary restraining order on the minor employee's mother. Police advised Attorney Michael not to go to the residence to serve the document herself and said that if she attempted to serve the document herself and the minor's mother called police, Attorney Michael would be charged with trespassing. In spite of that

admonition, Attorney Michael went to the residence and attempted to personally serve the minor's mother with the temporary restraining order. A Jefferson County court commissioner subsequently dismissed the case.

¶ 12. The Wisconsin Department of Workforce Development, after investigating wage claims filed on behalf of the minor and other former employees of the bed and breakfast, found Attorney Michael to be the person responsible for nonpayment of employees and found that $6,589.08 in unpaid wages remained outstanding, including $408 owed to the minor. The Department of Workforce Development also found that Attorney Michael had violated child labor laws and that she had offered false information and used an alias in an effort to interfere with their investigation.

¶ 13. The OLR's complaint also alleged that Attorney Michael engaged in a variety of misconduct to avoid paying wages to contractors who performed work at the bed and breakfast. The complaint alleged that Attorney Michael failed to pay money owed to a man who hung drywall at the bed and breakfast. The man took his tools and left after not receiving payment. Attorney Michael and her husband went to the man's residence unannounced and demanded that the man give them the tools necessary to complete the drywall work. The tools belonged to the man and he refused to turn them over. A physical altercation ensued involving Attorney Michael's husband and the man, in which the man suffered a broken elbow and a bruised hip. The man filed a petition for a temporary restraining order against Attorney Michael and her husband.

¶ 14. Attorney Michael sent a fax to the circuit judge saying that the man had an extensive drinking and drug problem and claimed to be the largest distributor of THC in Dodge and Waukesha counties. Attorney

Michael's husband was charged with battery and criminal damage to property stemming from the incident. The district attorney later amended the battery charge to disorderly conduct in exchange for Attorney Michael's husband pleading guilty to the amended charge. The criminal damage to property charge was dismissed and read in. The drywaller received a three-year injunction against Attorney Michael and her husband. A circuit court commissioner sent a letter to Attorney Michael reminding her that supreme court rules prohibit a lawyer from communicating ex parte with a judge about a matter pending before the court.

¶ 15. The OLR's complaint also alleged that Attorney Michael engaged in a course of conduct intending to avoid paying money to a man who did some remodeling work on the upper apartment located adjacent to the bed and breakfast and that Attorney Michael took tools that belonged to the man. The complaint also alleged that Attorney Michael misrepresented that another bed and breakfast employee had received free lodging and that she was responsible for utility bills.

¶ 16. The OLR's complaint further alleged that Attorney Michael engaged in misconduct to avoid paying money owed to onsite managers of an apartment building in Watertown, Wisconsin, owned by an LLC in which Attorney Michael and her husband had an interest. The couple served as the onsite managers for the apartments from June 1, 2006, through April 1, 2007. On or about April 1, 2007, the couple advised Attorney Michael they had decided to stop managing the apartments. At Attorney Michael's request the couple promptly returned all keys for the apartments other than their own. They gave Attorney Michael their timesheets for work they had performed in March of 2007 managing the apartments and getting some of the

apartments ready to be rented. The couple was not paid for the work they had performed.

¶ 17. Attorney Michael demanded that the couple return tools she had provided for the remodeling work. The couple refused to return the tools until they had been paid wages they were owed. Attorney Michael called the Watertown Police Department saying the couple was not owed any wages because the agreement was that the couple would receive reduced rent if they would work around the complex. A Watertown Police Department sergeant reported that he had been shown hours the couple had worked and had been shown where Attorney Michael's tools were. The tools were subsequently turned in to the police.

¶ 18. On April 3, 2007, Attorney Michael filed a summons and complaint for eviction against the couple as well as a summons and complaint for replevin seeking possession of their van. On both summons and complaint forms Attorney Michael identified the man as "[J.G.] AKA 'Cokehead' " and identified the woman as "[K.G.] AKA 'June Stupid.' " As of April 3, 2007, Attorney Michael had not provided written notice to the couple that any rent was overdue or allowed them five days to cure the asserted overdue rent as required by Wis. Stat. § 704.17. The couple believed they did not owe any rent because their time sheets for the management work showed wages due for managing the apartments that exceeded the rent due. In fact, the couple believed they were owed in excess of $2,600.

¶ 19. On or about April 7, 2007, Attorney Michael used her vehicle to push the man's truck onto the lawn of the apartment complex so that it hit an electrical box. When police investigated Attorney Michael's report that the man had driven his truck into the electrical box, police identified damage to Attorney Michael's car and

the transfer of paint from her car to the man's truck and determined that Attorney Michael had used her car to push the man's truck onto the grass and into the electrical box. Police also arrested Attorney Michael for having glued five large stickers onto the man's truck.

¶ 20. After April 10, 2007, Attorney Michael posted notices around the complex in public areas making misrepresentations about the couple, including claiming the man suffered from severe alcohol and cocaine addiction. A circuit court commissioner subsequently dismissed Attorney Michael's suits and granted the couple's counterclaims in the collective amount of $5,624.92.

¶ 21. The OLR's complaint also alleged that Attorney Michael engaged in misconduct in asserting unwarranted claims against two tenants of the Watertown apartment building. The couple were tenants of the apartment until May 31, 2007. In February of 2007, the couple gave Attorney Michael written notice of their intent to vacate the apartment on June 1, 2007. They advised Attorney Michael to keep their security deposit as rent for May of 2007. On May 15, 2007, Attorney Michael filed a summons and complaint for eviction against the couple. On the summons and complaint form, Attorney Michael identified the man as "[D.B.] AKA 'Mr. KKK,'" and identified the woman as "[D.F.] AKA 'The Oakridge Bitch.'" A circuit court commissioner dismissed the case for lack of service and ordered all inflammatory information and aliases stricken from the complaint, case caption, and CCAP entries. Attorney Michael later refiled the eviction action against the couple. The case was again dismissed.

¶ 22. The OLR's complaint also alleged that Attorney Michael failed to cooperate with OLR investigations and willfully failed to provide relevant information to the OLR. The complaint also alleged that

Attorney Michael made willful misrepresentations in the course of the OLR investigations.

¶ 23. The OLR's complaint was served on Attorney Michael on September 19, 2008. She failed to respond. On January 6, 2009, the referee issued an order to show cause why a default judgment should not be entered against her. A telephone hearing was scheduled for January 21, 2009. Attorney Michael did not respond to the order to show cause or participate in the telephone conference. Attorney Michael subsequently retained counsel, who contacted the referee asking whether Attorney Michael could have an additional 30 days to respond to the complaint. The referee gave Attorney Michael until October 8, 2009, to file a proposed answer and motion for relief. She did so.

¶ 24. The OLR requested an evidentiary hearing, which was set for February 25, 2010. The hearing was conducted on that day. On September 1, 2010, the referee issued an order relieving Attorney Michael from her default. The referee concluded that relief was warranted in the interest of justice. On November 16, 2010, the referee entered a scheduling order which specified that Attorney Michael's deposition would take place on December 8–10, 2010. Attorney Michael failed to appear on those dates. At OLR's request, the referee signed a proposed order rescheduling the deposition for January 19–21, 2011. Attorney Michael again failed to appear for her deposition. The OLR renewed its motion for a default judgment, striking Attorney Michael's answer and entering judgment against her.

¶ 25. In his May 10, 2011, report, the referee recommended that Attorney Michael be declared in default. The referee said, "Her neglect of these proceedings is astonishing and would, in and of itself, warrant substantial discipline. Her contempt for these proceed-

ings is of a piece with the contempt for her obligations as an attorney and officer of the court reflecting in the allegations against her which I now have no choice but to deem to be true."

¶ 26. The referee said:

> Michael repeatedly lied—to employees, reporters and suppliers—about her identity; often with intent to avoid her financial obligations. She repeatedly ignored these obligations and lashed out against those to whom she owed them. She abused process; made misrepresentations to judicial officers and defamatory statements about those to whom she owed money. She altered a court order and inserted scandalous material in pleadings, suggesting an utter lack of regard for the dignity of the courts and for her responsibility as an officer of those courts. She failed to cooperate with, and made misrepresentations to, the Office of Lawyer Regulation. She failed to appear and participate in these proceedings. Then, when given an opportunity to do so, she repeatedly missed deadlines and failed to meet her obligations.

> Ms. Michael claimed only vague familiarity with a complaint—signed by her—that is a significant part of the counts against her in which she referred, in an official filing, to the defendants as "Oakridge Bitch" and "Mr. Cokehead." None of this was very impressive then and it is less so now. I tried to give Ms. Michael chances to defend herself but she has exhausted any reasonable concept of [forbearance]—and indeed the ability of the court—to accommodate her. She has been offered multiple choices which she just wouldn't take. This is consistent with the pattern of behavior set forth in OLR's complaint. She explained a lengthy history of default judgments with the odd notion that she has so many improperly filed or bogus lawsuits filed against her that they cannot be defended. She testified that her law license was very important to her and then twice failed to appear at a deposition in the very proceeding that would determine whether she can keep it.

Although I decided, after a hearing, to give Ms. Michael another chance—a chance she squandered—her testimony at the hearing was consistent with this lack of regard for her obligations. She contradicted the affidavit of service on file with the court by asserting that it was handed to her attorney instead and that, although her attorney gave it to her, she paid no further attention to what "turned out" to be OLR's complaint against her. She blamed the multitude of complaints against her on the "mentally unstable" mother of a child who had "volunteered" at the bed and breakfast. She spoke of vague and undocumented problems with mail delivery and unsubstantiated health problems and extended stays in Chicago.

Given the severity and frequency of these violations, combined with her apparent disinterest in retaining her license to practice law, it is quite clear that to permit Michael to practice law would present serious risk to the public and the courts. It is my recommendation that her license to practice be revoked.

¶ 27. Attorney Michael has not filed an appeal from the referee's report and recommendation.

¶ 28. Although Attorney Michael was given multiple opportunities to present a defense to the OLR's complaint, she failed to do so. Accordingly, we deem it appropriate to strike her answer to the OLR's complaint and declare her in default.

¶ 29. A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

■

¶ 30. There is no showing that any of the referee's detailed findings of fact are clearly erroneous. Accordingly, we adopt them. We also agree with the referee's conclusions of law that Attorney Michael violated the following supreme court rules, some of them in multiple instances: SCRs 20:3.1(a)(1) and (a)(2);[1] former SCR 20:3.1(a)(3);[2] former SCRs 20:3.3(a)(1) and (a)(4);[3] SCR 20:3.4(c);[4] SCR 20:3.5(b);[5]

---

[1] SCRs 20:3.1(a)(1) and (2) state:

> In representing a client, a lawyer shall not:

> (1) knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law;

> (2) knowingly advance a factual position unless there is a basis for doing so that is not frivolous; . . . .

[2] Former SCR 20:3.1(a)(3) (effective through June 30, 2007) stated that in representing a client, a lawyer shall not "file a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of the client when the lawyer knows or when it is obvious that such an action would serve merely to harass or maliciously injure another."

[3] Former SCRs 20:3.3(a)(1) and (a)(4) (effective through June 30, 2007) stated that a lawyer shall not knowingly "(1) make a false statement of fact or law to a tribunal; . . . " and "(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."

[4] SCR 20:3.4(c) states a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists; . . . ."

[5] SCR 20:3.5(b) (effective July 1, 2007) provides that a lawyer shall not:

> communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order or for scheduling

former SCR 20:4.4;[6] SCRs 20:8.4(a), (c), and (f),[7] and SCR 20:8.4(h);[8] and SCRs 22.03(2) and (6).[9]

purposes if permitted by the court. If communication between a lawyer and judge has occurred in order to schedule the matter, the lawyer involved shall promptly notify the lawyer for the other party or the other party, if unrepresented, of such communication; . . . .

[6] Former SCR 20:4.4 (effective through June 30, 2007) stated: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

[7] SCRs 20:8.4(a), (c), and (f) provide it is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . .

(f) violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . .

[8] SCR 20:8.4(h) (effective July 1, 2007) provides it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

[9] SCRs 22.03(2) and (6) state as follows:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

337

¶ 31. Revocation of an attorney's license to practice law is the most severe sanction this court can impose. It is reserved for the most egregious cases. Although Attorney Michael had a license to practice law for only three years before her license was suspended for nonpayment of State Bar dues, during that short timeframe, she engaged in repeated, aggravated, and sometimes disturbing conduct that demonstrates she is apparently unable to conform her conduct to the standards expected of all members of the Wisconsin bar. In light of the extremely aggravated nature of the misconduct, we conclude that no sanction short of revocation would be sufficient to protect the public, achieve deterrence, and impress upon Attorney Michael the seriousness of her misconduct. We also agree that Attorney Michael should be assessed the full costs of the proceeding.

¶ 32. IT IS ORDERED that the license of Alexis L. Michael to practice law in Wisconsin is revoked, effective the date of this order.

¶ 33. IT IS FURTHER ORDERED that within 60 days of the date of this order, Alexis L. Michael shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 34. IT IS FURTHER ORDERED that, to the extent she has not already done so, Alexis L. Michael

. . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been revoked.