# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2012AP2727-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against James P. Grenisen, Attorney at Law: |
| | Office of Lawyer Regulation, |
| | Complainant, |
| | v. |
| | James P. Grenisen, |
| | Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST GRENISEN

| | |
|---|---|
| OPINION FILED: | December 13, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2012AP2727-D

STATE OF WISCONSIN            :         IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against James P. Grenisen, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**James P. Grenisen,**

      **Respondent.**

**FILED**

**DEC 13, 2013**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review a referee's report and recommendation concluding that Attorney James P. Grenisen engaged in professional misconduct and recommending that his license to practice law in Wisconsin be suspended for a period of 90 days. The referee also recommended that Attorney Grenisen undergo a psychological evaluation and that he provide no future legal representation to his former client.

¶2 We conclude the referee's findings of fact are supported by satisfactory and convincing evidence. We further determine that the seriousness of Attorney Grenisen's misconduct warrants the suspension of his license to practice law for 90 days. We also agree with the referee's recommendation that Attorney Grenisen undergo a psychological evaluation and that reinstatement of his license to practice law should be conditioned upon the evaluating medical professional opining, to a reasonable degree of professional certainty, that Attorney Grenisen is capable of discharging the duties of a person licensed to practice law in Wisconsin. We further conclude that Attorney Grenisen should be ordered to provide no future legal representation to his former client, and that the costs of this proceeding, which are $7,895.46 as of August 26, 2013, should be assessed against Attorney Grenisen.

¶3 Attorney Grenisen was admitted to practice law in Wisconsin in 1958 and practices in La Crosse. He has no prior disciplinary history.

¶4 On December 14, 2012, the Office of Lawyer Regulation (OLR) filed a complaint alleging five counts of misconduct with respect to Attorney Grenisen's representation of a 66-year-old adult female, L.E., who had been adjudged incompetent and subject to guardianship of her person and estate. Attorney Grenisen began representing L.E. in November 2009, challenging both L.E.'s guardianship and placement.

¶5 Pursuant to orders of the court in the guardianship and protective placement, and in order to qualify L.E. for

2

Medicaid, L.E.'s guardian authorized monies be expended for her care. On August 25, 2010, Attorney Grenisen appealed the circuit court's order denying his motion to terminate L.E.'s protective placement and return funds that Attorney Grenisen alleged were illegally taken.

¶6 On or about August 29, 2010, Attorney Grenisen filed a "Notice of Claim Against La Crosse County" with the La Crosse County clerk, claiming that employees of La Crosse County were responsible for illegally authorizing the transfer of L.E.'s funds for her care.

¶7 A hearing in L.E.'s case was held on September 23, 2010. At the hearing, Judge Levine repeatedly suggested to Attorney Grenisen that he obtain more knowledgeable substitute counsel for L.E.

¶8 At a February 3, 2011 court hearing, Judge Levine found that affidavits and documents faxed by Attorney Grenisen to opposing parties were not timely. As a result, the affidavits and documents were excluded.

¶9 During the February 3, 2011 hearing, Attorney Grenisen, while questioning a witness, persisted in testifying when he was not a witness, and he was admonished twice by the court to cease testifying.

¶10 An independent medical report ultimately obtained by Attorney Grenisen was not in proper form, did not address the relevant issues, was not usable by the court, and was not considered by the court.

¶11 On February 3, 2011, Judge Levine removed Attorney Grenisen as attorney for L.E. contrary to Attorney Grenisen's wishes. Attorney Grenisen was allowed to continue to represent L.E. for purposes of appeal only because the deadline for filing an appellate brief was imminent.

¶12 On February 17, 2011, the circuit court granted the motion of L.E.'s guardian ad litem for an ex parte temporary restraining order prohibiting Attorney Grenisen from having any contact whatsoever with L.E. until further order of the court.

¶13 During an April 1, 2011 hearing, Judge Levine stated on the record, in describing Attorney Grenisen's conduct during the hearing, "The level of disrespect is ridiculous. I give you every opportunity and you continue on."

¶14 In an April 21, 2011 letter to the OLR, Attorney Grenisen said, "I am experienced in claims and insurance law, but not guardianship and protective placement." The letter also indicated that Attorney Grenisen was representing L.E. pro bono.

¶15 L.E. held title to a 1999 Buick Century automobile. In a May 7, 2012 letter to the OLR, Attorney Grenisen said there was no evidence that the automobile was owned by L.E. even though her name was on the title.

¶16 On June 14, 2011, the court of appeals summarily affirmed the circuit court's order which had been appealed by Attorney Grenisen. The court of appeals said Attorney Grenisen's brief lacked both legal and factual development.

¶17 On July 8, 2011, Judge Levine found frivolous the motions filed by Attorney Grenisen to have the guardian and

4

guardian ad litem for L.E. removed and ordered reasonable attorney's fees and expenses of $140 assessed against Attorney Grenisen.

¶18 On July 8, 2011, Attorney Grenisen filed a motion in the court of appeals to reconsider that court's summary affirmance of the circuit court's ruling. The motion was deemed untimely and was denied on that basis on July 13, 2011.

¶19 On July 26, 2011, Attorney Grenisen filed another motion for reconsideration in the court of appeals. By order dated August 2, 2011, the court of appeals ordered that Attorney Grenisen's motion and any future correspondence relating to the closed appeal be placed in the court's correspondence file without action.

¶20 In a September 23, 2011 letter to the OLR, Attorney Grenisen said, "I had no knowledge of the guardianship and protective placement laws. . . . I have no courtroom experience."

¶21 In a letter dated October 5, 2011, to Wisconsin Assisted Living's regional director, Susan Murphy, Attorney Grenisen admitted that staff at the adult family home where L.E. was residing called 911 on April 16, 2011, in response to Attorney Grenisen coming upon the premises. Police who responded to the call informed Attorney Grenisen he would be trespassing if he returned to L.E.'s residence.

¶22 In a letter dated March 8, 2012, to the La Crosse County clerk, Attorney Grenisen claimed that counsel representing La Crosse County had an obligation to cure Attorney

5

Grenisen's misfiling in the wrong office of a claim against La Crosse County.  Attorney Grenisen asked that the letter itself be treated as a claim against the county.

¶23  On March 9, 2012, Attorney Grenisen filed a Notice of Injury or Property Damage with the La Crosse County clerk for bodily injury damages in the amount of $50,000 on behalf of L.E. for what he termed L.E.'s "false imprisonment."

¶24  On May 30, 2012, Attorney Grenisen filed a third motion for reconsideration in the court of appeals.  By order dated June 5, 2012, the court of appeals ordered that the motion be placed in the court's correspondence file without response.

¶25  The OLR's complaint alleged:

> [COUNT ONE] By failing to provide competent representation to his client by failing to possess and apply the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation of his client, [Attorney] Grenisen violated SCR 20:1.1.[1]

¶26  During the September 23, 2010 court hearing, Attorney Grenisen told the court he was representing L.E. pro bono.  However, he prepared and sent a written statement of services for work done for L.E., dated August 10, 2010, in the amount of $4,230, calculated at the rate of $100 per hour, showing itemized charges by day, covering a period from November 24, 2009, to May of 2010.  Attorney Grenisen failed to enter into a

---

[1] SCR 20:1.1 states:  "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

written fee agreement with L.E. or her representative, as required by the supreme court rules.

¶27 The OLR's complaint alleged:

> [COUNT TWO] By failing to enter into a written fee agreement with client L.E. (or L.E.'s representative) who was not regularly represented by [Attorney] Grenisen, in a matter where the fee was reasonably foreseen to exceed $1,000, [Attorney] Grenisen violated SCR 20:1.5(b)(1) and (2).[2]

¶28 The 1999 Buick Century automobile titled and insured in L.E.'s name was damaged in an accident on June 1, 2010. The damage resulted in insurance proceeds of $3,440. At the time of the accident and generation of the insurance proceeds, L.E. had been adjudged incompetent and a guardian of her person and estate and a guardian ad litem had been appointed for her.

---

[2] SCRs 20:1.5(b)(1) and (2) state:

> (b) (1) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.
>
> (2) If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing.

¶29 During a February 3, 2011 circuit court hearing, an insurance adjuster testified under oath that he had told Attorney Grenisen that since L.E. was the named insured and the person with title to the vehicle, payment had to be made to her. Attorney Grenisen directed the insurance adjuster to send the insurance proceeds check to Attorney Grenisen's address. Attorney Grenisen did not inform the court, the guardian, or the guardian ad litem that he had possession of the insurance proceeds.

¶30 Despite the existing guardianship, Attorney Grenisen had L.E. personally endorse and sign over the insurance proceeds check in the amount of $3,440 without obtaining permission of the court, the guardian, or the guardian ad litem. In a September 23, 2011 letter to the OLR, Attorney Grenisen admitted, "I endorsed the check after [L.E.] signed." Attorney Grenisen deposited the check into his own personal checking account.

¶31 At the February 3, 2011 circuit court hearing, Attorney Grenisen testified under oath that he had spent all of the insurance proceeds on his own personal expenses. In an April 21, 2011 letter to the OLR, Attorney Grenisen claimed the insurance proceeds were a nontaxable gift to him. In a letter dated May 17, 2011, to the State Public Defender's office, several months after he had deposited and spent the insurance proceeds, Attorney Grenisen said he had represented L.E. pro bono for the last year and a half.

¶32  In a September 23, 2011 letter to the OLR, Attorney Grenisen said he did not inform the guardian or guardian ad litem about the insurance proceeds because "it was not their concern."  In the same letter he again said the insurance proceeds "[were] a gift for pro bono legal work for [L.E.]."

¶33  Attorney Grenisen told L.E.'s guardian ad litem that the insurance settlement proceeds were properly paid to the heirs of a third party, who Attorney Grenisen was also representing.  On or about February 2, 2011, Attorney Grenisen drafted and had his incompetent client, L.E., sign an affidavit disavowing any legal interest in the Buick but instead saying the car belonged to Bob Ritter, who Attorney Grenisen was also representing.  Attorney Grenisen had L.E. sign the affidavit without the permission or knowledge of the court, guardian, or guardian ad litem.  On February 2, 2011, Attorney Grenisen prepared and had the heir of Bob Ritter sign an affidavit in opposition to a motion to return funds to L.E.'s estate.

¶34  The OLR's complaint alleged:

[COUNT THREE] By having his incompetent client sign over the client's $3,440 insurance proceeds and depositing same in his personal account purportedly for the benefit of third party Ritter; failing to inform the court, guardian or guardian ad litem of [Attorney] Grenisen's possession of said funds; and having L.E. sign an affidavit disowning legal interest in her own car, all without the knowledge or permission of the court, guardian or guardian ad litem, [Attorney] Grenisen engaged in conduct

9

involving dishonesty, fraud, deceit or misrepresentation in violation of SCR 20:8.4(c).[3]

[COUNT FOUR] By instructing his incompetent client L.E. to sign over insurance proceeds arising from an accident involving the incompetent client's car, in favor of third party Ritter, who [Attorney] Grenisen was also representing; by depositing said insurance proceeds in [Attorney] Grenisen's own personal account and having his incompetent client sign an affidavit disowning any interest in her own car, in favor of third party Ritter, who [Attorney] Grenisen was also representing, [Attorney] Grenisen was simultaneously representing two different parties with a concurrent conflict of interest such that the interest of L.E. was directly adverse to Ritter (or his heirs), in violation of SCR 20:1.7(a).[4]

¶35 On February 3, 2011, Judge Levine, following an evidentiary hearing, in open court and with Attorney Grenisen present, ordered Attorney Grenisen to refund and return to L.E.'s estate the $3,440 insurance proceeds within ten days. Judge Levine ordered that in the event Attorney Grenisen failed

---

[3] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[4] SCR 20:1.7(a) provides as follows:

Except as provided in par. (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

10

to return the money within that time, he would be subject to contempt. A copy of Judge Levine's written order was mailed to Attorney Grenisen on or about February 8, 2011.

¶36 On April 1, 2011, Judge Levine held a hearing on the issue of Attorney Grenisen's ordered repayment and contempt. Attorney Grenisen personally appeared at the hearing. Judge Levine found Attorney Grenisen in contempt of court for intentionally failing to comply with the court's order to repay the money. Judge Levine awarded sanctions of $100 per day as a forfeiture against Attorney Grenisen for every day past April 11, 2011, that the $3,440 was not returned to L.E.'s estate.

¶37 Attorney Grenisen obtained a bank money order in the amount of $3,400 payable to the clerk of court of La Crosse County on April 11, 2011. This amount was $40 short of the amount Attorney Grenisen had deposited into his personal account.

¶38 On July 1, 2011, Attorney Grenisen appealed Judge Levine's contempt finding to the court of appeals. By order dated March 15, 2012, the court of appeals affirmed the contempt finding and found Attorney Grenisen's appeal frivolous and remanded the matter to the trial court for assessment of costs against Attorney Grenisen. Attorney Grenisen filed a motion for reconsideration with the court of appeals. The motion was denied on June 6, 2012.

¶39 On June 22, 2011, Attorney Grenisen filed a small claims lawsuit in La Crosse County in his own name against the

11

guardian for L.E. in the amount of $3,440.  On the return date of July 15, 2011, the small claims suit was voluntarily dismissed.

¶40  The OLR's complaint alleged:

> [COUNT FIVE]  By failing to comply with the trial court's order to return the $3,440 to the estate of L.E. within 10 days, resulting in a finding of contempt of court against [Attorney] Grenisen, and by continuing to attempt to represent L.E. at the trial court level after the court had ordered him removed from the case at the trial level, [Attorney] Grenisen knowingly disobeyed an obligation under the rules of a tribunal, in violation of SCR 20:3.4(c).[5]

¶41 Attorney Grenisen filed an answer to the OLR's complaint on January 31, 2013.  Allan Beatty was appointed referee in the matter.  An evidentiary hearing was held before the referee on June 13, 2013.  On August 5, 2013, the referee filed his report and recommendation.  The referee concluded the OLR had met its burden of proving all counts of misconduct alleged in the complaint.  The referee recommended that Attorney Grenisen's license to practice law be suspended for 90 days and that, as a condition of reinstatement, he undergo a psychological evaluation and that he agree that he will not represent L.E. in any manner or form in the future.  The referee explained:

> Concerning the specific five violations, . . . [Attorney Grenisen] acknowledged

---

[5] SCR 20:3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists; . . . ."

that he was unprepared to represent someone in a protective placement and guardianship. His failure to provide competent representation is more aggravated because over a period of several years he has persisted in his representation of the ward, has reiterated his lack of knowledge about guardianship and protective placement, has not shown an effort to gain the requisite knowledge, has not completed his tasks in a timely manner, and has questioned the competence of the other lawyers involved. Despite his ignorance he persists in the position that if the judge or another lawyer does not agree with him, they are wrong.

Even in his sanctions brief in this case, [Attorney Grenisen] deviated from the issues at hand to criticize the guardian ad litem and to label Judge Levine's contempt finding "egregious" and the judge's remarks "slanderous." . . .

Dishonesty, fraud, deceit, and misrepresentation, as alleged in Count Four, are harsh words. Yet they apply to [Attorney Grenisen's] actions in his representation of L.E. [Attorney Grenisen] misrepresented to the insurance adjuster . . . that the insurance payout should go to [Attorney Grenisen's] address, rather than the guardian. He misrepresented to the insurance adjuster that the proceeds of the insurance would go to L.E. He had L.E. endorse a check she was not competent to endorse and failed to disclose receipt of the check to the ward's guardian. He prepared and had the ward sign an affidavit she was not competent to sign. [Attorney Grenisen] has misrepresented to Judge Levine, the various lawyers investigating the alleged violations, and this referee that the $3,440 was a gift.

. . .

What is most egregious about [Attorney Grenisen's] conduct and perspective is his complete lack of respect for the authority of the circuit court judge. To [Attorney Grenisen] any decision contrary to [his] position is so flawed that it does not require compliance. Any lawyer who walks into a courtroom needs to know who has the last word. If a lawyer is not willing to abide by the judge's decision, their careers are going to be marked by

13

[a lot] of frustration and conflict, and their clients are not going to be well served.

. . .

Attorney Grenisen has not expressed any comprehension of this concept. His decisions are final. Any attorney in disagreement is at least mistaken, if not incompetent. It is as if [Attorney Grenisen] is on his own Don Quixote-esque mission and reality has no role. His chivalrous quest in behalf of L.E. continues regardless.

¶42 The referee also recommended that, prior to Attorney Grenisen's reinstatement, he submit to a psychological evaluation. In addition, the referee recommended that Attorney Grenisen must agree not to provide any future legal representation to L.E.

¶43 No timely appeal has been filed from the referee's report and recommendation.

¶44 This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶45 The referee's findings of fact in this case have not been shown to be clearly erroneous, and we adopt them. We also agree with the referee's conclusions of law. We further agree with the referee's recommendation for a 90-day suspension of Attorney Grenisen's license to practice law in Wisconsin. Although Attorney Grenisen has not previously been disciplined

14

for professional misconduct, his actions in this case were inappropriate and unprofessional. His refusal to comply with the circuit court's orders not to have further contact with L.E. is troubling, and as a result, we concur with the referee's recommendation that, as a condition of Attorney Grenisen's reinstatement, he undergo a psychological evaluation to determine whether he is capable of discharging the duties of an attorney licensed to practice law in this state. We further agree with the referee that Attorney Grenisen may not provide any future legal representation to L.E.

¶46 IT IS ORDERED that the license of James P. Grenisen to practice law in Wisconsin is suspended for a period of 90 days, effective January 17, 2014.

¶47 IT IS FURTHER ORDERED that within 60 days of the date of this order, James P. Grenisen shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶48 IT IS FURTHER ORDERED that the reinstatement of James P. Grenisen's license to practice law shall be conditioned upon his obtaining a satisfactory psychological evaluation in which the evaluator states, to a reasonable degree of professional certainty, that James P. Grenisen is capable of discharging the duties of a person licensed to practice law in this state.

¶49 IT IS FURTHER ORDERED that James P. Grenisen shall not provide any future legal representation to L.E.

¶50 IT IS FURTHER ORDERED that James P. Grenisen shall comply with the provisions of SCR 22.26 concerning the duties of

15

a person whose license to practice law in Wisconsin has been suspended.

¶51 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).