# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1433-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Matthew S. MacLean, Attorney at Law: |
| | Office of Lawyer Regulation,<br>           Complainant,<br>      v.<br>Matthew S. MacLean,<br>           Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST MACLEAN

| | |
|---|---|
| OPINION FILED: | June 3, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| |
|---|
| SOURCE OF APPEAL: |
| COURT: |
| COUNTY: |
| JUDGE: |

| |
|---|
| JUSTICES: |
| CONCURRED: |
| DISSENTED: |
| NOT PARTICIPATING: |

ATTORNEYS:

**2016 WI 45**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2015AP1433-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Matthew S. MacLean, Attorney at Law:**

**Office of Lawyer Regulation,**

       **Complainant,**

  **v.**

**Matthew S. MacLean,**

       **Respondent.**

**FILED**

**JUN 3, 2016**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.   We review the report and recommendation of Referee Richard C. Ninneman that the license of Attorney Matthew S. MacLean be suspended for two years for professional misconduct and that Attorney MacLean pay the full costs of this proceeding, which are $3,573.11 as of January 28, 2016.   The referee also recommends that, during the period of his suspension, Attorney MacLean continue participation in the

Wisconsin Lawyers Assistance Program (WisLAP) monitoring program.

¶2 After careful review of this matter, we adopt the referee's findings of fact and conclusions of law. We agree with the referee that a two-year suspension of Attorney MacLean's license is an appropriate sanction for his misconduct. We further agree that the full costs of the proceeding should be assessed against the attorney, and we also agree that Attorney MacLean should be required to continue participation in the WisLAP monitoring program during the term of his suspension.

¶3 Attorney MacLean was admitted to practice law in Wisconsin in 1998. He has no prior disciplinary history. He is not currently practicing law and the State Bar of Wisconsin lists his license status as "inactive."

¶4 On July 17, 2015, the Office of Lawyer Regulation (OLR) filed a complaint alleging that Attorney MacLean committed four counts of misconduct. The complaint alleged that between June 1999 and March 2006, Attorney MacLean was employed by the law firm of Michael, Best & Friedrich, LLP, first as an associate and later as a contract partner. In 2006, Attorney MacLean became the general counsel and chief compliance officer for the investment firm Red Granite Advisors, LLC (Red Granite). In late 2011, Red Granite was acquired by Ziegler Lotsoff Capital Management, LLC (Ziegler). Red Granite continued as the wholly owned subsidiary of Ziegler. During Attorney MacLean's employment with Red Granite, he had access to and maintained the accounts payable records for the company.

2

¶5   The complaint alleged that between March 2006 and December 2014, Michael, Best & Friedrich sublet office space and several parking spaces at its Milwaukee location to Red Granite pursuant to a written sublease agreement.  The complaint further alleged that in 2010, BrickStix LLC (BrickStix) was formed to commercialize a product designed by Attorney MacLean's minor son.  The complaint further alleged that Attorney MacLean drafted the Articles of Organization for BrickStix, which listed Attorney MacLean, his wife, and another man as the organizing members.

¶6   In January 2011, Attorney MacLean and his wife opened a checking account at Park Bank, titled in the name of BrickStix.  Attorney MacLean wrote out substantially all of the deposits to and checks from the BrickStix account.  The complaint alleged that Attorney MacLean failed to clearly and consistently keep the finances and credit card accounts associated with businesses in which he was involved separate and distinct from other businesses and from his and his family's personal finances.

¶7   The OLR's complaint further alleged that between March 2006 and September 2013, Attorney MacLean misappropriated more than $450,000 belonging to Red Granite and/or Ziegler.  The complaint alleged that to facilitate and/or hide his misappropriation of funds from Red Granite and/or Ziegler, Attorney MacLean obtained a lock box and caused payments due from Red Granite and/or Ziegler to Michael, Best & Friedrich to be directed to the lock box, and he created and caused

3

fraudulent invoices purporting to be from Michael, Best & Friedrich to be presented to Red Granite and Ziegler. The complaint alleged that Attorney MacLean caused checks to be issued by Red Granite or Ziegler payable to Attorney MacLean, BrickStix, or third parties, but falsely identified the checks in Red Granite's and Ziegler's accounts payable records as being payable to a legitimate vendor, including Michael, Best & Friedrich.

¶8 The complaint alleged that Attorney MacLean caused BrickStix to use more than $5,000 of misappropriated funds to pay BrickStix's expenses. In the summer of 2012, Attorney MacLean approached Ziegler's chief operating officer, S.R., about S.R. purchasing a membership interest in BrickStix, because BrickStix required additional capital, including funds for production and patent expenses. Between July 2012 and March 2013, in furtherance of inducing S.R. to purchase a membership interest in BrickStix, Attorney MacLean provided S.R. with inaccurate and misleading information about BrickStix's financial condition. Relying on the misleading and inaccurate information, in March 2013 S.R. wired $50,000 into the BrickStix account. The money was intended as the purchase price for an LLC of which S.R. was president, to purchase a membership interest in BrickStix. The OLR's complaint alleged that if Attorney MacLean had provided accurate information regarding the financial condition of BrickStix and Attorney MacLean's actions related to the BrickStix account, S.R. would not have pursued

4

purchasing an interest in BrickStix and would not have caused the LLC to do so.

¶9 The complaint alleged that Attorney MacLean, without authorization from the appropriate persons associated with Red Granite, opened a bank account at Guaranty Bank in the name of Red Granite to help facilitate or hide his misappropriation of funds. Between July 2013 and September 2013, Attorney MacLean caused several checks to be issued from the BrickStix account payable to Red Granite and then caused the checks to be deposited in the dummy account at Guaranty Bank. Attorney MacLean, as the general counsel of BrickStix, did not inform the managing member, the board of directors, or any other members that he deposited funds he misappropriated from Red Granite and/or Ziegler into the BrickStix account. He also did not inform the managing member, board of directors, or any other members of BrickStix that he had used the BrickStix account in furtherance of his course of conduct to misappropriate funds from Red Granite and/or Ziegler, nor did he inform the managing member, board of directors, or any other members of BrickStix that he used funds he misappropriated from Red Granite for the benefit of BrickStix.

¶10 The OLR's complaint alleged that a company called Stifel acquired Ziegler and demanded $458,000 restitution from Attorney MacLean. On or about February 2015, Attorney MacLean and others paid Stifel cash and assigned common stock back to Stifel in the total amount of $404,750.04. Attorney MacLean withheld over $52,000, claiming entitlement under an April 2014

severance agreement. Neither Stifel nor Ziegler was aware of Attorney MacLean's misappropriations at the time the severance agreement was signed.

¶11 The OLR's complaint alleged the following counts of misconduct:

> COUNT ONE: By (i) engaging in a course of conduct that included misappropriating funds belonging to Red Granite and/or Ziegler; and (ii) engaging in a course of conduct to hide his misappropriations and related wrongful conduct, [Attorney] MacLean violated SCR 20:8.4(c).[1]

> COUNT TWO: By engaging in a course of conduct that included using funds misappropriated from Red Granite for the benefit of BrickStix, [Attorney] MacLean violated SCR 20:8.4(c).

> COUNT THREE: By engaging in a course of conduct intended to induce a third party to purchase an interest in BrickStix through the use of misleading and inaccurate information regarding BrickStix's financial condition, and/or the omission of information related to [Attorney] MacLean's deposit of funds misappropriated from Red Granite and/or Ziegler in the BrickStix Account, [Attorney] MacLean violated SCR 20:8.4(c).

> COUNT FOUR: [Attorney] MacLean acted under a concurrent conflict of interest by representing BrickStix as its General Counsel while at the same time engaging in a course of conduct that included: (i) failing to keep BrickStix's finances separate from his personal finances and the finances of Red Granite, thereby causing confusion in the handling of credit card accounts and payments from the BrickStix Account; (ii) causing funds [Attorney] MacLean misappropriated from Red Granite and/or Ziegler to be deposited in the

---

[1] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to . . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

BrickStix Account; (iii) using the BrickStix Account as part of his course of conduct intended to misappropriate funds from Red Granite and/or Ziegler; and/or (iv) using funds misappropriated from Red Granite for the benefit of BrickStix, and all without notifying the Managing Member, the Board of Directors, or the other Members of BrickStix, thereby violating SCR 20:1.7(a)(2).[2]

¶12 On October 1, 2015, the parties signed a stipulation whereby Attorney MacLean entered a plea of no contest to the misconduct counts alleged in the complaint. The parties agreed that the facts stated in the complaint could be used as a

_____

[2] SCR 20:1.7(a)(2) provides:

(a) Except as provided in par. (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . .

(2) there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under par. (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in a writing signed by the client.

factual basis by the referee to make a determination of misconduct. The parties agreed that Attorney MacLean could make arguments and produce mitigating factors and other evidence regarding sanctions.

¶13 As part of the stipulation, Attorney MacLean asserted a number of mitigating factors, including that he voluntarily withdrew from the practice of law in May 2014, upon reporting his conduct to the OLR, and he declined an employment opportunity at a law firm to address his situation and to prevent the law firm from being associated with his conduct. Attorney MacLean averred that he sought assistance from WisLAP, which led to his being diagnosed with bipolar disorder. According to his treating psychiatrist and treating therapist, Attorney MacLean's conduct at issue in this matter is the result of his bipolar disorder. Attorney MacLean says he changed his State Bar of Wisconsin membership to inactive status effective October 31, 2014. He says he has cooperated with the investigations of his conduct by the OLR and others; he has expressed remorse, regret, and concern for the victims of his conduct; and he has used family resources to make full restitution and also used family funds to repay the aborted investment in his company.

¶14 The hearing before the referee was held on December 10, 2015. Attorney MacLean was the only witness to testify. At the hearing, the OLR reduced the requested sanction from revocation to a three-year suspension. Attorney MacLean sought a shorter suspension or asked that the suspension commence at

8

the time he self-reported his conduct to the OLR and ceased practicing law in May 2014. Based on the parties' stipulation, the referee found that the OLR had met its burden of proving by clear, satisfactory, and convincing evidence that Attorney MacLean committed the four counts of misconduct set forth in the OLR's complaint. The referee recommended that Attorney MacLean's license to practice law in Wisconsin be suspended for two years, commencing with the date of this court's order.

¶15 The referee pointed out that Attorney MacLean has not practiced law since he self-reported his misconduct in May of 2014. The referee noted that following a two-year suspension, there will be an additional passage of time during which Attorney MacLean will have to petition for reinstatement, have a hearing before a referee, and ultimately have this court act on the petition. The referee said when all is said and done, Attorney MacLean will probably have been out of the practice of law for nearly five years. The referee said that period of time will satisfy the OLR's concerns of impressing Attorney MacLean with the seriousness of his misconduct and ensuring that he continues to cooperate with WisLAP in the treatment of his bipolar disorder. The referee also recommends that, during the period of Attorney MacLean's suspension, he be required to continue participation in the WisLAP monitoring program and submit periodic reports to the OLR as to his continued cooperation with his treatment recommendations.

¶16 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo.

9

See <u>In re Disciplinary Proceedings Against Eisenberg</u>, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See <u>In re Disciplinary Proceedings Against Widule</u>, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶17 There is no showing that any of the referee's findings of fact are clearly erroneous. Accordingly, we adopt them. We also agree with the referee's conclusions of law that Attorney MacLean violated the supreme court rules enumerated above.

¶18 Upon careful review of the matter, we agree with the referee's recommendation for a two-year suspension of Attorney MacLean's license to practice law in Wisconsin. Attorney MacLean's misconduct was serious and warrants a significant penalty. However, Attorney MacLean did present a number of mitigating factors, including the fact that he self-reported his conduct to the OLR, he sought assistance from WisLAP and voluntarily submitted to WisLAP for monitoring of his treatment for bipolar disorder, he made full restitution, and he cooperated with the investigation into his conduct. The referee commented that from the referee's observation at the hearing, Attorney MacLean "clearly appeared to be remorseful, regretful and concerned for the victims of his misconduct." In addition, Attorney MacLean's lack of previous disciplinary history also warrants some consideration.

¶19 We agree with the referee that a two-year suspension is an appropriate sanction and is generally consistent with prior disciplinary decisions. For example, in <u>In re</u>

10

*Disciplinary Proceedings Against Dahle*, 2015 WI 29, 361 Wis. 2d 430, 862 N.W.2d 582, an attorney with no previous disciplinary history was suspended for two years and six months for multiple counts of misconduct, including violations of SCR 20:8.4(c). Attorney Dahle was found to have misappropriated over $400,000 in client funds. In addition, in *In re Disciplinary Proceedings Against Ramthun*, 2015 WI 94, 365 Wis. 2d 7, 869 N.W.2d 775, an attorney was suspended for two years and six months for multiple counts of misconduct, including four counts of violating SCR 20:8.4(c). Attorney Ramthun had no prior disciplinary history other than a brief temporary suspension for failure to cooperate with the OLR's investigation into two of the matters giving rise to the proceeding that resulted in the two-and-a-half-year suspension.

¶20 Finally, we agree with the referee that, during the term of his suspension, Attorney MacLean should be required to continue monitoring with WisLAP and should be required to submit periodic reports to the OLR showing his continued cooperation with his monitoring and treatment recommendations. We also agree that Attorney MacLean should be required to pay the full costs of this proceeding.

¶21 IT IS ORDERED that the license of Matthew S. MacLean to practice law in Wisconsin is suspended for a period of two years, effective the date of this order.

¶22 IT IS FURTHER ORDERED that during the period of his suspension, Matthew S. MacLean shall continue participation in the Wisconsin Lawyers Assistance Program and shall submit

11

quarterly reports to the Office of Lawyer Regulation showing his continued cooperation with monitoring and treatment recommendations of WisLAP.

¶23 IT IS FURTHER ORDERED that within 60 days of the date of this order, Matthew S. MacLean shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $3,573.11. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Matthew S. MacLean to practice law in Wisconsin shall remain suspended until further order of the court.

¶24 IT IS FURTHER ORDERED that, to the extent he has not already done so, Matthew S. MacLean shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶25 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(3).